IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| FORIS DAX, INC. d/b/a CRYPTO.COM | § § § | |
| Plaintiff, | § § § | |
| v. | § § | Case No. _____ |
| NATHAN STEELE and CROFAM.COM, LLC | § § § § | |
| Defendants. | § § | |

# COMPLAINT AND JURY DEMAND

Plaintiff Foris Dax, Inc. d/b/a Crypto.com ("Crypto.com") hereby alleges and complains against Defendants Nathan Steele ("Steele") and Crofam.com, LLC ("Crofam.com") (collectively, "Defendants") as follows.

## NATURE OF THE ACTION

1. Crypto.com brings this action against Defendants under the Lanham Act (15 U.S.C. § 1051 et seq.) and under common law to seek remedies for Defendants' unfair competition and false designation of origin, trademark infringement, fraudulent procurement of trademark registrations, and tortious interference arising from Defendants' unlawful misappropriation, use, and registration of the "CROFAM" mark and public communications concerning the same.

4905-2205-2021.1

1

2.    Specifically, Defendants have unlawfully attempted to misappropriate and have infringed, and continue to infringe, Plaintiff's trademark rights in the CROFAM and #CROFAM trademarks (the "CROFAM Marks"). As explained in detail below, Defendants have fraudulently procured two federal trademark registrations of the CROFAM Marks from the United States Patent and Trademark Office (the "Trademark Office"), and own two other pending applications to register CROFAM with the Trademark Office. Defendants are using these ill-gotten registrations to, *inter alia,* harm Crypto.com's business and interfere with its customers.

3.    This action arises under the trademark laws of the United States, 15 U.S.C. §§ 1125, 1120, 1064 and 1119, and common law trademark infringement, unfair competition, and tortious interference laws of the State of Texas.

## THE PARTIES

4.    Crypto.com is a Delaware corporation with its principal place of business at 110 North College Avenue, Suite 500, Tyler, Texas 75702. Crypto.com is a cryptocurrency exchange company, offering various financial services through its website and mobile applications.

5.    Nathan Steele is a Texas resident residing at 3301 Catalina Drive, Killeen, Texas 76549. Upon information and belief, Steele is the founder and sole member of Crofam.com, LLC.

6.     Crofam.com, LLC is a Texas limited liability company with its principal place of business at 3301 Catalina Drive, Killeen, Texas 76549. Crofam.com can be served by serving its registered agent for service of process, Rocket Lawyer Corporate Services LLC, 14001 West Highway 29, Suite 102, Liberty Hill, Texas 78642.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a)–(b), because this action arises under the Lanham Act (15 U.S.C. § 1051 et seq.).

8.     This Court has personal jurisdiction over Defendants, because Defendants are Texas residents and conduct business in this district and throughout the State of Texas. Further, this Court has personal jurisdiction over Defendants, because they have committed acts of trademark infringement of the CROFAM Marks in this judicial district and throughout the State of Texas. Lastly, this Court has personal jurisdiction over Defendants, because Defendants' conduct caused harm to Crypto.com's business headquartered in Tyler, Texas.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims

occurred here, namely Defendants' infringing activities and the resulting harm to Crypto.com's business.

## BACKGROUND

10.    Crypto.com was founded in 2016 as a cryptocurrency exchange and trading platform. During the ten years of its existence, it has grown exponentially to become one of the world's largest trading platforms, with tens of millions of customers across the globe.

11.    Crypto.com has integrated a number of digital assets (e.g., cryptocurrencies like Bitcoin and Ethereum) into its products and services. One such asset is Cronos ("CRO" for short), which has developed into one of the most popular cryptocurrencies worldwide.

12.    Crypto.com has publicized and continues to publicize the integration of Cronos by using the CROFAM Marks on various social media platforms. Crypto.com has routinely utilized #CROFAM since at least 2021.

13.    Upon information and belief, Nathan Steele has been a Crypto.com customer since 2021. As a Crypto.com customer for a number of years, he is or should be aware of Crypto.com's prolific use of the #CROFAM hashtag. Notwithstanding such knowledge, and despite Crypto.com's ubiquitous prior use, Steele, on behalf of Crofam.com, began a campaign of claiming trademark rights over the word "Crofam."

14.    In January 2023, Steele formed Crofam.com. In public records, Steele is listed as the "Manager" and "Director" of Crofam.com. Upon information and belief, Steele is the only person affiliated with or employed by Crofam.com.

15.    From January 2023 to July 2023, there are no records of Crofam.com doing business. However, in mid-July 2023, Steele began advertising the "CROFAM App" on his Twitter/X account and building out the Crofam.com website. On this Crofam.com website, Steele began marketing Crofam.com as "The World's Digital Platform," intended to facilitate sharing images, text, video, and audio content. See https://www.crofam.com/ (last visited May 29, 2026). Crofam.com also advertised its mobile application, merchandise store, and the purported "CROFAM™ Wallet."

16.    Beginning in April of 2023, Steele, through Crofam.com, began to file federal trademark applications to register the CROFAM mark covering four different classes of goods and services, two of which have since proceeded to registration (Registration Nos. 7,650,881 and 7,677,244, collectively the "Infringing Registrations") and two of which remain pending (Application Ser. Nos. 98/390,478 and 99/127,549, collectively the "Infringing Applications") (together with the Infringing Registrations, the "Infringing Filings"), as set forth below:

| Mark | Filing Date | App. No. / Reg. No. | Goods/Services & Claimed First Use Date | Status |
|---|---|---|---|---|
| CROFAM | May 7, 2024 | 98/537,691 7,750,881 | Class 9: Downloadable computer software for the collection, editing, organizing, modifying, book marking, transmission, storage, and sharing of data and information<br><br>Claimed Date of First Use in Commerce:<br><br>January 4, 2023 | Registration issued on April 8, 2025 |
| CROFAM | April 4, 2024 | 98/485,272 7,677,244 | Class 36: Providing electronic processing of credit card transactions and electronic payments via a global computer network<br><br>Claimed Date of First Use in Commerce:<br><br>January 4, 2023 | Registration issued on February 4, 2025 |
| CROFAM | February 4, 2024 | 98/390,478 | Class 38: Provision of telecommunications connections to a | Application pending |

| | | | global computer network | |
|---|---|---|---|---|
| CROFAM | April 8, 2025 | 99/127,549 | Class 45: Online social networking services<br><br>Claimed Date of First Use:<br><br>January 4, 2023 | Application pending |

17.    Originally, Crofam.com was the record owner of all the Crofam marks referenced in the Infringing Filings.

18.    As shown in the chart above, Defendants represented that they had first used the CROFAM mark in commerce in connection with Class 9 goods and services in Classes 36 and 45 on January 4, 2023. Upon information and belief, that representation was false. As of January 4, 2023, Crofam.com was not conducting business and was not marketing any goods or services for sale. The earliest record of any commercial activity was the self-serving announcement of the CROFAM App on July 17, 2023.

19.    Furthermore, upon information and belief, Defendants falsely represented that they developed computer software falling within the purview of Class 9.

20.    While Defendants purport to offer a downloadable app, users are unable to engage in the "collection, editing, organizing, modifying, book

marking, transmission, storage, and sharing of data and information" contrary to Defendants' claims in the Infringing Registrations.

21.     For downloadable computer software, a trademark applicant must submit a specimen that shows use of the mark in connection with the downloadable computer software. Such a specimen is acceptable only if it creates an association between the mark and software and provides sufficient information to enable the user to download or purchase the software from a website.

22.     Defendants submitted the below image in connection with the prosecution of the Infringing Registrations.



CROFAM™ Store on the
CROFAM™ App



23.    Upon information and belief, Defendants were not making bona fide use of the CROFAM mark in U.S. commerce in connection with downloadable computer software on May 7, 2024 (the filing date of the

Infringing Registration covering Class 9) or as January 4, 2023 (the claimed date of first use in the Infringing Registration covering Class 9).

24.    Additionally, upon information and belief, Defendants have never had the ability to provide electronic credit card processing services that would entitle them to trademark registration under Class 36. To the contrary, website screenshots reflect that Crofam.com used PayPal and Venmo as its payment methods, rather than a proprietary processing service.



25.    Defendants' assertion that it provides "electronic processing of credit card transactions and electronic payments via a global computer network" is false. At most, Defendants merely accepted credit card payments on a purported shop interface, but Defendants in no way provide payment processing

services and never have. Further, the specimen submitted to the Trademark Office consists of a demonstration transaction, which does not show use of a mark in commerce. To show sufficient service mark use in commerce, the specimen must show a direct association between the services identified in the application and the mark sought to be registered. Mock transactions by the Defendants are insufficient to demonstrate actual use in commerce. As shown above, the document submitted to the Trademark Office by the Defendant is not a real transaction, as evidenced by the "John Doe" name.

26.    And lastly, upon information and belief, Defendants did not develop, market, or sell any communication services in U.S. commerce that come within the ambit of Class 45.

27.    Contrary to representations in Defendants' Infringing Filings and the AI-generated content on the Crofam.com website, the only business that Crofam.com appears to have ever engaged in was marketing clothing incorporating the CROFAM mark in a purely ornamental fashion and a mobile social media app that, upon investigation, is largely (if not exclusively) inhabited by AI-generated bots to give the false appearance of activity. In sum, Defendants do not actually offer goods and services in U.S. commerce as required to obtain valid trademark rights and procure federal trademark registrations.

4905-2205-2021.1

28. Yet, Steele, on behalf of Crofam.com, with knowledge of Crypto.com's prior use of the CROFAM Marks, submitted a sworn declaration in connection with the Infringing Filings that no other person had the right to use the mark. Not only did Defendants know that this statement was false, but Defendants also knew that they were not making bona fide use of the CROFAM mark in commerce and that the specimens submitted in support of the Infringing Registrations did not reflect actual use and were submitted in a calculated effort to deceive the Trademark Office.

29. Despite the lack of business activity, Defendants began an aggressive campaign to enforce their purported trademark rights by falsely accusing a number of people involved in the Cronos cryptocurrency community, many of whom were customers of Crypto.com, of trademark infringement. For example, on May 9, 2024, the Crofam.com Twitter/X account posted several messages claiming that Crofam.com owned "essential trademarks" and others' use of the CROFAM name was causing confusion and "disrupted commercial activities."

30. On May 14, 2024, Defendants publicly called upon Elon Musk to intervene and stop others from "posing as a financial company under CROFAM™."

4905-2205-2021.1



31.    For the next year, Defendants continued to repeatedly falsely claim rights in the CROFAM mark on its public Twitter/X account.

32.    Then, in March 2025, after securing a registration for the CROFAM mark covering Class 36 services (despite never offering such credit card processing services), Defendants ramped up the attacks. For example, on March 27, 2025, the Crofam.com Twitter/X account posted the following claim that any use of the terms CROFAM or #CROFAM constituted trademark infringement:



4905-2205-2021.1

33. These widely-disseminated claims were also paired with private, more directed messaging from Defendants.

34. For example, Defendants contacted Crypto.com directly to claim rights in the CROFAM mark and assert that Crypto.com had infringed on Crofam.com's trademark rights by continuing to use the hashtag #CROFAM.

35. Additionally, Defendants contacted a third party with whom Crypto.com has done business in the past (and intends to do business with in the future) to claim that Crypto.com's use of the hashtag #CROFAM violates Crofam.com's rights to the CROFAM mark.

36. Despite multiple attempts by Crypto.com to correct Defendants' false statements of alleged exclusive rights to the CROFAM mark, Defendants continue to falsely assert ownership of rights to the CROFAM mark in a manner that unlawfully impedes Crypto.com's rights to its CROFAM Marks.

37. Defendants' persistent misrepresentations regarding their purported rights in the CROFAM mark forced Crypto.com to pursue legal avenues for redress. On May 21, 2025, Defendants filed a petition in Texas state court seeking a pre-suit investigatory deposition (styled as *Foris Dax, Inc. d/b/a Crypto.com v. Crofam.com*; Cause No. 25-1351-B, in the 114th Judicial District for Smith County, Texas [the "Texas Proceeding"]).

38.     Despite merely requesting a deposition to investigate potential claims, no deposition has occurred after more than a year of proceedings. Crofam.com repeatedly refused to secure (and retain for any significant length of time) legal counsel, disregarding several court orders. Mr. Steele filed numerous frivolous *pro se* AI-generated motions on behalf of Crofam.com and in his own personal capacity challenging the court's jurisdiction and seriously delaying the Texas Proceeding. Ultimately, the court ordered Crofam.com to appear in-person for a deposition (scheduling concurrently with a show cause hearing concerning Mr. Steele, individually). Neither Mr. Steele nor a Crofam.com legal representative appeared for the deposition or hearing. As a result, a writ of attachment demanding Mr. Steele's arrest was issued and monetary sanctions were imposed. Mr. Steele was remanded into custody on June 17, 2026.

39.     Unbeknownst to Crypto.com, after the Texas Proceeding had commenced, all rights in the Infringing Filings were transferred from Crofam.com, LLC to Nathan Steele pursuant to an assignment dated October 29, 2025 (the "Purported Assignment"). Defendants submitted the assignment to the Trademark Office, and it was processed and recorded by the Assignment Recordation Branch on February 6, 2026.

4905-2205-2021.1                                     16

40.     Upon information and belief, the Purported Assignment was not a bona fide transfer of ownership but was instead executed and recorded for the improper and deceptive purpose of enabling Steele to act *pro se* in the Texas Proceeding, thereby avoiding the requirement that the entity be represented by legal counsel. However, Mr. Steele never informed the Texas court or Crypto.com of this fact.

41.     Upon information and belief, the Purported Assignment was a sham transaction, undertaken solely to manipulate legal and procedural requirements and not to effect a genuine change in ownership of Defendants' Infringing Filings. The Purported Assignment is further evidence of Defendants' bad faith conduct as it relates to the Infringing Filings.

42.     Crypto.com has been damaged, and will continue to be damaged by the continued existence of the Infringing Registrations due to, *inter alia*, Defendants' ongoing assertions that they have exclusive rights to the term CROFAM and that the use by Crypto.com and/or Crypto.com's customers who are part of the #CROFAM community infringes Defendants' alleged rights in CROFAM.

## COUNT I
### Unfair Competition and False Designation of Origin
### (Lanham Act—15 U.S.C. § 1125a)

43.    Crypto.com repeats and realleges the allegations set forth above as if fully restated herein.

44.    The acts of Defendants complained of herein constitute false designation of origin, false or misleading descriptions or representations of fact, and otherwise constitute unfair competition in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

45.    Crypto.com's date of first use of the CROFAM Marks is earlier than the alleged date of first use in any of the Infringing Filings or any constructive first use date upon which Defendants can rely.

46.    Crypto.com's common law rights in the CROFAM Marks predate and are superior to any rights Defendants may have in the CROFAM Marks.

47.    Defendants claim to be in the cyptocurrency space and are directing their false statements to Crypto.com's customers and users of the Cronos cryptocurrency. As such, Defendants' use of the CROFAM Marks has already caused actual consumer confusion in the marketplace and is likely to continue to cause confusion to the general purchasing public.

48.    Defendants' unauthorized use in commerce of the CROFAM Marks as alleged herein and the conduct of Defendants in the marketplace

constitutes use of a false designation of origin and/or misleading description and representation of fact. Specifically, Defendants' unauthorized use in commerce of the CROFAM Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' purported goods and services, and is likely to cause consumers to believe, contrary to fact, that Defendants are affiliated with, endorsed, sponsored by or authorized by Crypto.com.

49.    Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Crypto.com.

50.    Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

51.    As a result of Defendants' conduct, Crypto.com has been damaged and is entitled to damages, including but not limited to Defendants' profits from the sale of all infringing goods and/or services (if any), actual damages, enhanced damages, costs of litigation, and attorneys' fees.

4905-2205-2021.1

19

## COUNT II
## Common Law Trademark Infringement and Unfair Competition

52. Crypto.com repeats and realleges the allegations as set forth above as if fully set forth herein.

53. Defendants' conduct violates Crypto.com's common law trademark rights and constitutes unfair competition under the common law of the State of Texas.

54. Crypto.com has built up valuable goodwill in the CROFAM Marks, and the public recognizes Crypto.com as the source of goods and services offered under the CROFAM Marks.

55. With full knowledge of Crypto.com's use and ownership of the CROFAM Marks, Defendants trade on the goodwill associated with the CROFAM Marks, and mislead the public into assuming a connection between Defendants' goods and services and the CROFAM Marks.

56. Defendants' unauthorized use of the CROFAM Marks in the cryptocurrency space is likely to and does permit Defendants to pass off Defendants' products and services to the general public as those of Crypto.com, all to the detriment of Crypto.com and the unjust enrichment of Defendants.

57. Defendants' actions have caused and will continue to cause confusion, or mistake, or to deceive as to Defendants' affiliation, connection, or

association with Crypto.com, or as to the origin, sponsorship, or approval of its commercial activities.

58.   Defendants committed these acts maliciously and in conscious disregard of Crypto.com's rights. Defendants have caused and will continue to cause injury to Crypto.com. Crypto.com is entitled to injunctive relief and to recover actual damages and exemplary damages due to the knowing, willful, and intentional nature of Defendants' actions.

## COUNT III
**Civil Liability for Fraudulent Procurement of Trademark Registration**
**(Lanham Act—15 U.S.C. § 1120)**

59.   Crypto.com repeats and realleges the allegations set forth above as if fully restated herein.

60.   15 U.S.C. § 1120 states that "[a]ny person who shall procure registration in the Patent and Trademark office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof."

61.   Defendants obtained the Infringing Registrations for the CROFAM Mark by false or fraudulent declaration in writing and/or by false means through

Defendants' representations during the prosecution of the Infringing Registrations.

62.    Crypto.com has sustained harm and damages as a consequence of the false or fraudulent declarations in writing and representations made by Defendants in connection with the Infringing Filings for which Crypto.com is entitled to recover damages pursuant to 15 U.S.C. § 1120.

63.    Crypto.com alleges and seeks an award of damages pursuant to 15 U.S.C. § 1120 as a result of its damages resulting from Defendants' procurement of the Infringing Registrations by false or fraudulent declarations or representations or by other false means and attempts to do the same in connection with the filing of the Infringing Applications.

**COUNT IV**
**Cancellation of Trademark Registrations Due to Fraud**
**(Lanham Act – 15 U.S.C. §§ 1064 and 1119)**

64.    Crypto.com repeats and realleges the allegations set forth above as if fully restated herein.

65.    At the time of filing each of the Infringing Filings, Defendants were aware that Crypto.com used the CROFAM Marks in connection with the Cronos cryptocurrency services and related offerings.

66.    Defendants' representations to the Trademark Office in the Infringing Filings (e.g., that no other person, firm, corporation, or association has the right to use "CROFAM" in commerce) were false, made with knowledge that the representations were false, and intended to mislead the Trademark Office into issuing the Infringing Registrations, which Defendants were not entitled to receive.

67.    Defendants' evidence of use submitted to the Trademark Office in the Infringing Filings did not reflect use of the CROFAM mark in commerce. Defendants knew this because they were not making bona fide use of the CROFAM mark in commerce. Yet, Defendants submitted the specimens with intent to mislead the Trademark Office into issuing the Infringing Registrations.

68.    Defendants were aware that the foregoing false or fraudulent statements would be relied upon by the Trademark Office in making its determination during the examination and approval of the Infringing Filings.

69.    Defendants are not entitled to the registration of the CROFAM mark because Defendants misled the Trademark Office into believing statements concerning the Infringing Filings that, had the Trademark Office known the truth thereof, the Trademark Office would not have approved the registration of the Infringing Marks or approved the Infringing Filings.

70.     Pursuant to 15 U.S.C. § 1064 and this Court's authority under 15 U.S.C. § 1119, Crypto.com is entitled to cancellation of the Infringing Registrations.

## COUNT V
### Cancellation of Trademark Registrations Due to Priority and Likelihood of Confusion
### (Lanham Act – 15 U.S.C. §§ 1064 and 1119)

71.     Crypto.com repeats and realleges the allegations set forth above as if fully restated herein.

72.     Crypto.com's date of first use of the CROFAM Marks is earlier than the alleged date of first use in the Infringing Filings or any constructive first use date upon which Defendants can rely.

73.     Crypto.com's common law rights in the CROFAM Marks predate and are superior to any rights Defendants may have in CROFAM.

74.     The parties' marks are confusingly similar in that Defendants' mark CROFAM is phonetically, visually, and aurally identical to Crypto.com's CROFAM mark.

75.     Defendants claim to use the CROFAM mark with cryptocurrency-related products and services, like Crypto.com.

76.     The Infringing Filings are not limited to any particular class of purchasers. Therefore, Defendants' goods and services are presumed to be sold

to all normal purchasers for goods and services of this type. As such, the parties' goods and services are presumed to target the same classes of purchasers.

77.    In light of the alleged similarities in the parties' marks, alleged goods and services, and target customers, consumers are likely to believe, mistakenly, that Defendants' goods and services emanate from, are sponsored by, or are otherwise affiliated with Crypto.com and its CROFAM mark.

78.    If the Infringing Registrations are permitted to remain on the Trademark Office register, confusion in the trade and among the public is likely to occur, resulting in damage and injury to Crypto.com.

79.    Any defect in, objection to, or fault found with Defendants' goods and services would injure the reputation that Plaintiff has established for its CROFAM-branded goods and services.

80.    Pursuant to 15 U.S.C. § 1064 and this Court's authority under 15 U.S.C. § 1119, Crypto.com is entitled to cancellation of the Infringing Registrations.

## COUNT VI

### Tortious Interference with Prospective Contracts

81.    Crypto.com repeats and realleges the allegations set forth above as if fully restated herein.

82. Defendants' unauthorized use of the CROFAM Marks and false representations regarding the ownership of the CROFAM Marks was directed to members of the cryptocurrency community and, more specifically, the Cronos cryptocurrency community.

83. Upon information and belief, those individuals were prospective Crypto.com customers, with whom Crypto.com had a reasonable probability of entering into a business relationship with (the "Prospective Customers").

84. Defendants either acted with a conscious desire to prevent Crypto.com from forming a contractual relationship with the Prospective Customers or knew their actions were certain or substantially certain to interfere with Crypto.com's prospects of forming a business relation with the Prospective Customers.

85. Defendants' conduct was independently tortious or unlawful, as it was *inter alia* in violation of the Lanham Act.

86. Defendants' actions caused damage to Crypto.com in the form of reputational harm and lost profits.

87. Crypto.com is entitled to injunctive relief and to recover actual and exemplary damages due to the knowing, willful, and intentional nature of Defendants' actions. Additionally, this Court should award to Crypto.com any profits obtained by Defendants through their unlawful actions.

## COUNT VII

### Tortious Interference with Existing Contractual Relations

88.    Crypto.com repeats and realleges the allegations set forth above as if fully restated herein.

89.    Defendants' unauthorized use of the CROFAM Marks and false representations regarding the ownership of the CROFAM Marks was directed to members of the cryptocurrency community and, more specifically, the Cronos cryptocurrency community, many of whom were and are Crypto.com customers.

90.    Defendants willfully and intentionally interfered with Crypto.com's contractual relationships with those customers through their unauthorized use of the CROFAM marks and false representations regarding the ownership of the CROFAM Marks.

91.    Defendants' interference caused damage to Crypto.com in the form of reputational harm and lost profits.

92.    Crypto.com is entitled to injunctive relief and to recover actual, restitutionary, and exemplary damages due to the knowing, willful, and intentional nature of Defendants' actions. Additionally, this Court should award to Crypto.com any profits obtained by Defendants through their unlawful actions.

## PRAYER FOR RELIEF

93.    Wherefore, Crypto.com prays for judgment against Defendants as follows:

a.  Injunctive relief to enjoin Defendants' use of the CROFAM Marks and false representation of ownership of the CROFAM Marks;

b.  Actual damages;

c.  Disgorgement of Defendants' profits;

d.  Exemplary damages due to the knowing, willful, and intentional nature of Defendants' actions;

e.  Cancellation of the Infringing Registrations; and

f.  Any other such relief, in law or equity, to which Crypto.com is justly entitled.

## DEMAND FOR JURY TRIAL

94.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Crypto.com hereby demands a trial by jury for all issues so triable.

*[signature page follows]*

Dated: June 17, 2026

/s/ Terrell R. Miller

Laura Ganoza
*Pro hac vice application forthcoming*
Foley & Lardner LLP
2 South Biscayne Boulevard, Suite 1900
Miami, FL 33131
Telephone: (305) 482-8409
Facsimile: (305) 482-8600
lganoza@foley.com

Terrell R. Miller (Lead Attorney)
Texas Bar No. 24046446
Foley & Lardner LLP
1000 Louisiana Street, Suite 2000
Houston, Texas 77002
Telephone: (713) 276-5500
Facsimile: (713) 276-5555
tmiller@foley.com

Matthew D. Witsman
*Pro hac vice application forthcoming*
Foley & Lardner LLP
321 North Clark Street, Suite 3000
Chicago, Illinois 60654
Telephone: (312) 832-4552
Facsimile: (312) 832-4700
mwitsman@foley.com

Davis G. Mosmeyer III
Texas Bar No. 24106346
Foley & Lardner LLP
2021 McKinney Ave, Suite 1600
Dallas, Texas 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
dmosmeyer@foley.com

4905-2205-2021.1

29